UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AYANNA ROSENBERG, individually, and on behalf of all those similarly situated,

Plaintiff,

v.

CCS COMMERCIAL, LLC, (d/b/a Credit Collection Services Commercial), and PROGRESSIVE DIRECT INSURANCE COMPANY,

Defendants.

No. ____________________

(King County Superior Court Case No. 16-2-23429-1 SEA)

**NOTICE OF REMOVAL**

TO: THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1332, 1441, 1446 & 1453, Defendant CCS Commercial, LLC ("CCS"), by and through counsel, hereby removes to this Court the state court action entitled *Rosenberg v. CCS Commercial, LLC and Progressive Direct Insurance Company*, pending in the Superior Court of the State of Washington in and for the County of King, under Case No. 16-2-23429-1 (the "State Court Action") under the Class Action Fairness Act and 28 U.S.C. § 1332(a)(1) following receipt of new information from Plaintiff



LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

regarding the nature and extent of damages sought, which restarts the 30-day clock for removal as of March 15, 2017 under 28 U.S.C. § 1446(b)(3).[1]

## I. PROCEDURAL HISTORY

On or about September 28, 2016, Plaintiff Ayanna Rosenberg ("Plaintiff"), an individual, filed a putative class action complaint against CCS and Progressive Direct Insurance Company ("Progressive") in King County Superior Court (the "State Court Action"). A copy of the Complaint is attached as Ex. 1 to the Declaration of Kevin. A. Michael ("Michael Decl."). CCS initially removed the State Court Action to this Court on October 11, 2016 (Case No. 2:16-cv-01597). *See* ECF Dkt. No. 1.[2] Plaintiff moved to remand on October 27, 2016. *See* ECF Dkt. No. 12. On December 19, 2016, this Court issued an Order remanding the case to state court. Michael Decl., Ex. 2; ECF Dkt. No. 28. In its December 19, 2016 Order, the Court stated:

> Most fundamentally, CCS's conjecture that plaintiff may be seeking to recover any and all monies CCS recovered as a result of its collection letters is not based on the language of the complaint, plaintiff's individual facts, the legal claims asserted, or plaintiff's stated theory of the case.

*Id*. at p. 3. This Court also queried whether the amount of money reflected in Sayre Malone's declaration was based on only unadjudicated tort claims (or reflected collection of court judgments). *Id*. The Court ultimately advised that "[s]hould CCS develop evidence sufficient to show by a preponderance of the evidence that the amount in controversy in the case exceeds [the jurisdictional threshold] it may make another attempt at removal." *Id*. at p. 4.

On remand in the State Court Action, co-defendant Progressive filed a "Motion to Dismiss or, In the Alternative, Motion for a More Definite Statement" to determine, without speculation, the type of damages Plaintiff seeks to recover on behalf of the putative class. *See* Michael Decl., Ex. 3 at p. 14-15 (discussing the need for a more definite statement to resolve

---

[1] As set forth below, on March 15, 2017, Plaintiff filed a "Supplemental Statement Regarding Damages Sought in Complaint," which clarifies the nature of the damages being sought in this matter. Plaintiff foreshadowed its alleged damages claim in a response brief to co-defendant Progressive's Motion for a More Definite Statement, which was filed on February 21, 2017. In an abundance of caution, CCS files this removal within 30 days of Plaintiff's response brief.

[2] All "ECF" citations relate to Case No. 2:16-cv-01597-RSL.



LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

concerns raised by this Court in its Order remanding to state court). In response to that motion, Plaintiff clarified that she "seeks recovery of all monies CCS recovered as a result of the collection letters it sent on unadjudicated, unliquidated tort claims[.]" *See* Michael Decl., Ex. 4. at p. 14. In other words, Plaintiff seeks disgorgement of all sums collected as a result of CCS's collection letters. As noted by this Court, that was not readily apparent in the Complaint.

In its March 3, 2017 Order, the State Court, acknowledging that this Court appeared uncertain as to the nature of the damages being sought in the Complaint, ordered Plaintiff to file an Amended Complaint or a Statement of Damages that set forth the categories of damages that the putative class will seek. *See* Michael Decl., Ex. 5. On March 15, 2017, Plaintiff filed her Supplemental Statement Regarding Damages Sought in Complaint. *See* Michael Decl., Ex. 6. In that newly filed pleading, Plaintiff established that she seeks "recovery of all monies CCS recovered as a result of the collection letters it sent on [ ] unadjudicated, unliquidated tort claims (i.e., not any claims pursued pursuant to judgment)." *Id*. p.2. Plaintiff confirmed she understands the monies recovered by CCS in response to collection letters it sent on unadjudicated, unliquidated claims to be more than $8,000,000 – far exceeding the $5,000,000 CAFA jurisdictional threshold – based on the original Declaration of CCS's Sayre Malone. *Id*.

Under 28 U.S.C. § 1446(b)(3), "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." CCS has obtained new information that establishes that Plaintiff is seeking disgorgement of all payments collected by CCS through its subrogation collection letters. This Notice of Removal is thus timely under 28 U.S.C. § 1446(b)(3).

## II. <u>NATURE OF DISPUTE</u>

This is a civil action commenced by Plaintiff against Defendants CCS and Progressive, seeking class certification on behalf of "[a]ll persons in the State of Washington, and all persons



LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

who were involved in a collision with a Washington insured, who received a debt collection-type notice from CCS where CCS was attempting to recover a subrogated interest in the form of an unadjudicated, unliquidated tort claim on behalf of an insurance company (including but not limited to Progressive)." *See* Complaint at ¶ 6.2. Plaintiff seeks in excess of $663.49 individually, as well as recovery on behalf of a proposed class numbering in the hundreds. *Id*. at ¶¶ 5.8; 6.7-6.10. Individually and on behalf of the proposed class, Plaintiff also seeks treble damages (up to $25,000 per violation), pre- and post-judgment interest at 12%, cost of suit, attorney fees and expenses, and injunctive relief based on allegations that Defendants have violated Washington's Consumer Protection Act, RCW 19.86.010 *et seq*., and have been unjustly enriched. *Id*. at ¶¶ 6.11(a)-(f); 7.11-19 (Claims for Relief); ¶ 8 (Prayer for Relief).

## III. GROUNDS FOR REMOVAL

The State Court Action is a civil action over which this Court has original jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332 & § 1453, because the parties are minimally diverse and the matter in controversy as alleged by Plaintiff exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is alleged by Plaintiff to be a class action in which "members number in the hundreds." *See* Complaint at ¶ 6.7.

### A. Minimal Diversity Exists Because Plaintiff Is A Citizen of Washington, Whereas Defendants Are Citizens of Delaware and Ohio.

A natural person is considered a citizen of the state where the person is domiciled – that is, where the person has established a fixed habitation or abode, intending to remain there permanently or indefinitely. *See, e.g., Lew v. Moss*, 797 F.2d 747, 749-50 (9th Cir. 1986). The Complaint filed in the State Court Action alleges that Plaintiff currently resides in Washington. *See* Complaint at ¶ 2.1. Accordingly, Plaintiff is a citizen of Washington State. CCS is a Delaware limited liability company with its principal place of business in Massachusetts. Defendant Progressive Direct Ins. Co. is an Ohio corporation. *See* Michael Decl., Ex. 7.



LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

Minimal diversity exists because Plaintiff is a citizen from a state different from at least one defendant.

**B. The Amount In Controversy Is Satisfied Because It Exceeds The Sum or Value of $5,000,000, Exclusive of Interest and Costs.**

Under CAFA, the aggregate amount in controversy must exceed $5,000,000 for the entire putative class, exclusive of interest and costs. 28 U.S.C. §1332(d). The notice of removal may assert the amount in controversy if the initial pleading in the state court action does not specify the dollar damages being sought and the petitioner has a good-faith belief that the plaintiff is seeking damages in excess of the jurisdictional amount. LCR 101(a); *see also* 28 U.S.C. § 1446 (c)(2)(A); *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014) (holding, pursuant to 28 U.S.C. § 1446(a), that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold"). Removal is proper on the basis of an amount in controversy asserted by the defendant "'if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." *Dart*, 135 S. Ct. at 554 (footnote omitted). "The amount in controversy is not proof of the amount that plaintiff will recover. Rather it is an estimate of the amount that will be put at issue in the course of the litigation." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

**a. Plaintiff Seeks Recovery Of All Monies CCS Recovered As A Result Of The Subrogation Recovery Letters It Sent On Unadjudicated, Unliquidated Tort Claim, Which Amounts Far Exceed $5,000,0000.**

Plaintiff has now established that she seeks recovery of all monies CCS recovered as a result of the subrogation recovery letters it sent on unadjudicated, unliquidated tort claims (*i.e.*, excluding any claims pursued to judgment). *See* Michael Decl., Ex. 3 at p. 14; Ex. 5 at p. 2. In order to calculate the damages that Plaintiff's proposed class could potentially recover, CCS identified all monies recovered by CCS as a result of the subrogation recovery letters it sent on unadjudicated, unliquidated tort claims that fall within Plaintiff's putative defined class: "[a]ll



LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

persons in the State of Washington, and all persons who were involved in a collision with a Washington insured, who received a debt collection-type notice from CCS where CCS was attempting to recover a subrogated interest in the form of an unadjudicated, unliquidated tort claim on behalf of an insurance company (including but not limited to Progressive)."[3] *See* Complaint at ¶ 6.2.

As set forth in the November 14, 2016 Declaration of Sayre Malone ("Malone Decl."), Michael Decl, Ex. 8; EFC Dkt. No. 20, CCS used its data analytics system to identify subrogation recovery accounts of current Washington residents who remitted subrogation recovery payments to CCS between September 12, 2012 and September 27, 2016, following receipt of a "collection-type notice" from CCS wherein CCS was attempting to recover a subrogated interest on an unadjudicated, unliquidated tort claim on behalf of an insurance company, including but not limited to Progressive.[4] *See* Malone Decl. at ¶¶ 5-7; Second Declaration of Sayre Malone[5] ("Second Malone Decl.") at ¶¶ 4-5. The search parameters were limited to subrogation recovery accounts (unadjudicated, unliquidated claims) and did not produce any results whereby the subrogation interest that CCS collected had previously been reduced to judgment (or later reduced to judgment after issuance). *See* Second Malone Decl. at ¶ 5.

The search produced a report containing 36,593 entries (payments) from 4,605 separate accounts. *Id.* at ¶¶ 5, 8. Each entry constitutes a payment made by a Washington resident after receipt of a subrogation recovery letter from CCS whereby CCS was attempting to collect a subrogated (unliquidated, unadjudicated) interest on behalf of an insurance company, which claim was not later reduced to judgment. *Id.* at ¶¶ 6-7. Each entry includes only payments made to CCS wherein the account holder was first sent a subrogation recovery letter from CCS

---

[3] CCS reserves the right to dispute Plaintiff's allegations, including but not limited to Plaintiff's characterizations of the nature of the subrogation recovery at issue and the letters issued.

[4] The statute of limitations for a claim under the WCPA is four years. *See* RCW 19.86.120. CCS reserves the right to dispute whether the alleged claims arising out of the accounts identified herein are time-barred.

[5] CCS provides the Second Malone Declaration to clarify issues raised by the Court in its Order remanding the case to state court.



LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

between September 12, 2012 and September 27, 2016. *See* Malone Decl. at ¶5. CCS calculated the total dollar amount remitted by these Washington residents following receipt of a subrogation recovery letter by CCS to recover a subrogated interest on behalf of an insurance company to be $8,721,649.16. *See* Second Malone Decl. at ¶ 5. This amount (without the addition of treble damages (capped at $25,000 under the WCPA), costs of complying with injunctive relief, or attorney fees), yields potential compensatory damages far exceeding the $5,000,000 jurisdictional threshold.

**b. Under RCW 19.86.090, Treble Damages, Up To $25,000 Per Proven Violation, Are Properly Included In The Amount In Controversy Calculations.**

Plaintiff has asserted a Washington Consumer Protection Act ("WCPA") claim, RCW 19.86.090 *et seq*., against CCS. *See* Complaint at ¶7.1-7.12. Under the WCPA, "[t]he district court may, in its discretion, increase the award of damages to an amount not more than three times the actual damages sustained, but such increased damage award shall not exceed twenty-five thousand dollars." *See, e.g., Lewis v. Hartford Cas. Ins. Co.*, 2015 U.S. Dist. LEXIS 94253 at *6 (W.D. Wash. July 20, 2015). This Court has discretion to award treble damages up to $25,000 per proven violation to each putative class member. RCW 19.86.090; *Smith v. Behr*, 113 Wn. App. 306, 345-46, 54 P.2d 665 (2002).

The potential compensatory damages, above, are subject to trebling under the WCPA. The following calculation assumes—solely for purposes of establishing the jurisdictional threshold—that Plaintiff will be able to establish a separate WCPA violation with respect to each of the 4,605 separate accounts. *See* Second Malone Decl. at ¶8. Each account holder was sent a subrogation recovery letter from CCS between September 12, 2012 and September 27, 2016 to recover an unliquidated, unadjudicated interest on behalf of an insurance company, and remitted payment to CCS.



LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

The aggregate total of payments remitted to CCS for 91 of the accounts exceeds $25,000 when trebled.[6] Accordingly, the maximum potential WCPA damages for these alleged violations is $25,000 per violation – or $2,275,000 in the aggregate for the 91 accounts. *See* Second Malone Decl. at ¶ 9. The total aggregate payments made to CCS with respect to these 91 accounts is $1,133,030.29. Accordingly, the aggregate payments made by the holders of the remaining 4,514 accounts is $7,588,618.90 ($8,721,649.16 - $1,133,030.29), which figure is potentially subject to trebling under the WCPA.[7] Combined, the potential compensatory and treble damages in controversy for the putative class is at least $25,040,856 ($2,275,000 + $22,765,856). The $5,000,000 jurisdictional amount in controversy is satisfied.

**c. Plaintiff's Claim for Attorney Fees Further Increases the Amount in Controversy.**

Plaintiff also seeks attorney fees. *See* Complaint at ¶ 8.G. Courts in the Ninth Circuit hold that attorney fees should be estimated over the course of the entire litigation for purposes of determining the amount in controversy. *See, e.g., Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029 (N.D. Cal. 2002) ("The Ninth Circuit clearly considers attorneys' fees when assessing amount in controversy. [] Such fees necessarily accrue until the action is resolved."). "[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). Here, attorney fees are available under the WCPA if Plaintiff can prove a violation. *See* RCW 19.86.090.

Attorney fees can be assessed either through a "percentage-of-recovery" approach or through a "lodestar" approach. *Bowles v. Wash. Dep't of Ret. Sys.*, 121 Wn.2d 52, 72, 847 P.2d 440 (1993). A "percentage of recovery" approach sets attorney fees by calculating the total recovery secured by the attorneys and awarding them a reasonable percentage of that recovery,

---

[6] Any account that remitted more than $8,333.33 total to CCS would be "capped out" at a maximum $25,000 treble damages award. There are 91 such accounts.

[7] The $7,588,618.90 figure trebled equals $22,765,856.



LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

often in the range of 20 to 30 percent. *Id*. (citing *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). By contrast, a "lodestar" approach sets the fees by first determining the number of hours that were reasonably spent by the attorneys, multiplying it by a reasonable hourly compensation, and then adjusting this amount upward or downward based on additional factors. *Id*. (citing *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 597-99, 675 P.2d 193 (1983)).

Multiple courts in the Ninth Circuit assess attorney fees by applying a percentage to the aggregate recovery for the putative class. *Vizcaino v. Microsoft Corp*., 142 F. Supp. 2d 1299, 1302 (W.D. Wash. 2001) ("[T]he percentage-of-recovery approach is used in determining attorneys' fees in a common fund class action.") (citing *Bowles*, 121 Wn.2d at 72.); *Altamirano v. Shaw Indus*., 2013 U.S. Dist. LEXIS 84236, at *35 (N.D. Cal. June 14, 2013) (permitting use of 25% benchmark in calculation of attorney fees for purposes of determining amount in controversy); *Burton v. Trinity Universal Ins. Co*., 2015 U.S. Dist. LEXIS 21953, at *4 (D. Mont. Feb. 24, 2015) (same). In common fund cases, the benchmark award is generally between 25 and 33 percent of the recovery obtained. *Bowles*, 121 Wn.2d at 72. The Ninth Circuit has established 25% of the common fund as a benchmark award for attorney fees. *Dawsey v. Travelers Indem. Co*., 2015 U.S. Dist. LEXIS 93051, at *7 (W.D. Wash. July 16, 2015) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. [] However, the exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark.") (citations omitted).

"For purposes of determining the amount in controversy, attorneys' fees are based on both compensatory and punitive damages at issue." *Burton*, 2015 U.S. Dist. LEXIS at *4; *Altamirano*, 2013 U.S. Dist. LEXIS at *35; *Steckmest v. Farmers Ins. Exch.*, 2013 U.S. Dist.



LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

LEXIS 133723, at *17 (D. Mont. Aug. 9, 2013) (in determining the amount in controversy applying a 25% benchmark for recovery of fees to compensatory and punitive damages).

As set forth above, the potential aggregate class recovery of compensatory and treble damages is $25,040,856. Applying 25% of the potential aggregate class recovery as a benchmark yields attorney fees of $6,260,214.[8]

**d. Plaintiff's Injunctive Claims Further Increases the Amount in Controversy.**

Plaintiff also seeks a permanent injunction enjoining Defendants from using recovery notices "substantially similar" to those described in Plaintiff's Complaint. *See* Complaint at ¶ 7.19; ¶ 8.H. The "test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce" and that "the potential cost to the defendant of complying with the injunction … represents the amount in controversy for jurisdictional purposes." *McCauley v. Ford Motor Co. (In re Ford Motor Company/Citibank (S.D.) N.A.)*, 264 F.3d 952, 958 (9th Cir. 2001). It is "well established" that the value of injunctive or declaratory relief "is measured by the value of the object of the litigation." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002). Here, although she seeks a permanent injunction enjoining Defendants from using certain language, Plaintiff has not provided any specific information regarding the changes she seeks. To the extent the value of the injunctive relief is determined based on the object of the litigation, for jurisdictional purposes, it is reasonable to place a value on the injunction equal to the damages described above. The request for injunction adds to the amount in controversy set forth in the above calculations of compensatory and treble damages, plus attorney fees. These sums far exceed the CAFA $5,000,000 jurisdictional threshold.

**C. Venue Is Proper.**

Removal to this Court is proper because the State Court Action was filed in this Court's district. *See* 28 U.S.C. § 1441(a).

---

[8] Again, the figures set forth in this response are for the purposes of ascertaining jurisdiction only; CCS reserves the right to contest attorney fees, including but not limited to the proper method of calculation and applicable percentages, if any.



LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

## IV. INTRADISTRICT ASSIGNMENT

LCR 101(e) requires that the removing party include in the notice of removal a paragraph titled "intradistrict assignment" that identifies any basis for reassigning the case to the Seattle or Tacoma Division pursuant to the assignment criteria listed in LCR 3(d). Cases removed from state court will be initially assigned to the Seattle Division or Tacoma Division according to the county where the action is pending. Since the State Court Action is pending in King County and Plaintiff alleges the claim arose in King County, assignment to the Seattle Division is proper. Also, under LCR 3(d), cases in which the claim arose in King County will be assigned to a judge in Seattle. LCR 101(e).

## V. STATE COURT PLEADINGS

Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings and orders in the State Court Action served upon CCS as of March 23, 2017, are filed with this Notice of Removal of Civil Action and attached hereto, collectively, as Ex. 9 to Michael Decl. There are no hearings or motions currently pending in the State Court Action.

## VI. CONCLUSION

Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal of Civil Action will be promptly filed in the State Court Action and served upon Plaintiff.

Based on the foregoing, CCS removes to this Court the State Court Action.

DATED: March 23, 2017

COZEN O'CONNOR

By: *s/ William H. Walsh*
*s/ Kevin A. Michael*
*s/ Nadia A. Bugaighis*

William H. Walsh, WSBA #21991
E-mail: wwalsh@cozen.com
Kevin A. Michael, WSBA #36976
E-mail: kmichael@cozen.com
Nadia A. Bugaighis, WSBA #45492
E-mail: nbugaighis@cozen.com
999 Third Avenue, Suite 1900
Seattle, WA 98104
Telephone: 206.340.1000
Attorneys for Defendant CCS Commercial, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on March 23, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to counsel of record as indicated below:

***Attorneys for Plaintiff:***

Chase Alvord
James Bulthuis
Tousley Brain Stephens PLLC
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101
Phone: (206) 682-5600
Facsimile: (206) 682-2992
Email: calvord@tousley.com
jbulthuis@tousley.com

***Attorney for Plaintiff:***

Matthew J. Ide
7900 SE 28th Street, Suite 500
Mercer Island, WA 98040
Phone: (206) 625-1326
Email: mjide@yahoo.com

***Attorney for Defendant Progressive Direct Ins. Co.:***

Matt Donohue
Markowitz Herbold PC
1211 SW Fifth Avenue, Suite 3000
Portland, OR 97204
Phone: (503) 295-3085
Email: mattdonohue@markowitzherbold.com

DATED this 23rd day of March, 2017.

By: *_/s/ Leslie Nii Yamashita_*
Leslie Nii Yamashita, Legal Assistant



LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000