UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AYANNA ROSENBERG, | CASE NO. C17-476 MJP |
| Plaintiff, | ORDER ON MOTION FOR CLASS CERTIFICATION |
| v. | |
| CCS COMMERCIAL, LLC, et al., | |
| Defendants. | |

The above-entitled Court, having received and reviewed:

1. Plaintiff's Motion to Certify Class (Dkt. No. 36),

2. Defendant CCS's Opposition to Plaintiff's Motion to Certify Class (Dkt. No. 44),

3. Progressive Direct Insurance Company's Opposition to Plaintiff's Motion for Class Certification (Dkt. No. 45),

4. Plaintiff's Consolidated Reply in Support of Motion for Class Certification (Dkt. No. 54),

5. Surreply of Defendant CCS in Opposition to Plaintiff's Motion to Strike (Dkt. No. 67),

all attached declarations and exhibits, and relevant portions of the record, rules as follows:

IT IS ORDERED that Plaintiff's motion to certify a class is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion to strike is DENIED.

## **Background**

Defendant CCS Commercial LLC ("CCS") is a collection service employed by insurance companies (including Defendant Progressive Direct Insurance Company; "Progressive") to collect payments from drivers who are involved in auto accidents with their insureds.

On July 13, 2013, Plaintiff (who was uninsured at the time) was involved in a collision with one of Progressive's insureds, David Waters. Progressive paid for the repair of Waters' vehicle, then hired CCS to recover the cost of the repairs from Plaintiff. No suit was filed or judgment obtained against Plaintiff. About a year after the accident, CCS sent two collection notices to Plaintiff. (Dkt. No. 1-2, Class Action Complaint ["CAC"] ¶¶ 1.1 – 5.19.)

Plaintiff alleges that the form and content of the notices are intended to deceptively mimic debt collection notices:

- "CREDIT COLLECTION SERVICES" appears in capitalized and bolded letters across the top.
- "WARNINGNOTICE.COM" appears four times in the border around the notice.
- The letter informs the recipient that "[i]n the absence of [insurance] coverage, our client will consider you financially responsible for your portion of the damages determined by their adjuster."

(Dkt. No. 38-1, Decl. of Bulthuis, Ex. 1.) Plaintiff contacted CCS about the amount alleged in the notice and received a second letter from CCS dated July 24, 2014 documenting the loss and confirming that the amount was correctly stated. Plaintiff was instructed to "[e]ither remit full

payment at this time, or contact this office immediately upon review of the attached supporting documentation." (Id. at Ex. 2.)

On August 3, 2014, Plaintiff received a second notice from CCS. It contained the same "CREDIT COLLECTION SERVICES" header and "WARNINGNOTICE.COM" border and stated:

> The above referenced amount still remains unpaid. Unless we hear from you directly, we will attempt to contact you at your residence and/or place of employment, in compliance with applicable State and Federal Law(s).
> Unless you can provide this office with valid insurance information that existed on the date of incident, our client will consider you financially responsible for your portion of the damages as determined by their adjuster.
>
> Please be advised, failure to respond to this notice could result in a law suit being filed against you and/or license suspension (contingent upon applicable state law).

(Id. at Ex. 3.)

Immediately after the accident, however (and before receiving any written notices), Plaintiff contacted an attorney for whom she had previously worked. (Dkt. No. 46, Ex. A, Depo of Plaintiff at 27:20-28:6, 76:5-9.) Her former employer referred her to an attorney with whom he shared an office: Matthew Ide, Plaintiff's current counsel and former class counsel in Panag v. Farmer Ins. Co. of Wash., 166 Wn.2d 27 (2009), a class action suit wherein the class members' standing to bring a CPA action against a collection agency's allegedly deceptive attempts to collect on subrogation claims was upheld. Plaintiff estimates she talked to Mr. Ide five times before receiving any written communication from CCS. (Id. at 34:1-5, 44:7-10.)

In October, 2014, CCS believed it had exhausted all avenues for collecting from Plaintiff and determined to close her file. However, before the file could actually be closed, Plaintiff called and indicated she wished to set up payment arrangements on the subrogation claim. (Dkt.

No. 48, Decl. of Shapiro, ¶15, Ex. B at 49.) As of November 14, 2014, Plaintiff had satisfied the subrogation claim with CCS. (Id. at ¶ 13.)

Then, in July 2015, Plaintiff filed a small claims suit against the other driver in the accident, Mr. Waters (Progressive's insured). Significantly, she did not claim the amount she had paid to CCS as part of her damages in that suit. (Depo of Plaintiff, 86:4-88:6; Exs. 6 and 7.) Waters did not appear at the hearing and Plaintiff received a default judgment for $2,753.65. (Dkt. No. 46, Decl. of Walsh, Ex. P.) Progressive paid the entire judgment. (Id. at Ex. Q.)

During discovery, CCS identified "the number of Washington residents who made a payment/payments to CCS between September 12, 2012 and September 27, 2016 after receipt of a subrogation recovery letter" as 4,605. (Dkt. No. 1-3, Decl. of Malone, ¶ 8.)

Plaintiff proposes the following Class:

> All persons in the State of Washington, and all persons who were involved in a collision with a Washington insured, who, after September 28, 2012, received a debt collection-type notice identified as a "subrogation claims" from CCS where CCS was attempting to recover a subrogated interest in the form of an unadjudicated, unliquidated tort claim on behalf of an insurance company (including but not limited to Progressive) and remitted payment to CCS or an insurance company.

Plaintiff proposes the following Subclass:

> All persons in the State of Washington, and all persons who were involved in a collision with a Washington insured, who, after September 28, 2012, received a debt collection-type notice identified as a "subrogation claims" from CCS where CCS was attempting to recover a subrogated interest in the form of an unadjudicated, unliquidated tort claim on behalf of Progressive and remitted payment to CCS or Progressive.[1] (Dkt. No. 36, Motion at 12-13.)

---

[1] Plaintiff has narrowed her Class and Subclass definitions from those stated in her complaint, and cites to case law permitting such a narrowing without the necessity of amending her complaint. Abdeljalil v. General Elec. Capital Corp., 306 F.R.D. 303, 306 (S.D. Cal. 2015). Defendants interposed no objections.

**Discussion**

*Motion to strike*

Before analyzing the certification request, the Court turns to Plaintiff's motion to strike certain of Defendant's evidentiary offerings. The motion appears within Plaintiff's reply and Defendant was allowed 6 pages of surreply to respond.

<u>Portions of Declaration of Shapiro (COO)( Dkt. No. 48)</u>

- *Paragraphs 6-9, 12, 18*: Plaintiff moves to strike all mention of CCS's subrogation claims practice, including the number of insurers it collects for, on the grounds that CCS was ordered to produce that information to Plaintiff and failed to do so. The order Plaintiff refers to is an order on a motion to compel which was issued on January 19, 2018 (Dkt. No. 40) ordering Defendant to produce certain information regarding their subrogation claims practice. However, as CCS points out, only one specific portion of the order contained a date-certain deadline ("within 7 days") and the agency produced that information within the time allotted. There was no deadline on the remaining items and CCS produced them by on March 28.

    The Court notes initially that Plaintiff's claim that "[t]he Court ordered CCS to describe its practices for collecting on subrogation claims" is not accurate – the order required Defendant to produce "any notices or written policies for when collection notices are to be used and what notice should contain." (Dkt. No. 40 at 1.) Second of all, Plaintiff does not claim or demonstrate any prejudice from the failure. Defendant asserts that "Plaintiff had a full opportunity to respond to this evidence in her reply brief," but it must be referring to the

evidence that CCS attached to its response brief because Plaintiff's reply was filed on March 9, almost three weeks before CCS actually produced the evidence in accordance with the order.

The Court does not intend to strike the portions of the declaration describing CCS's business practices because they are not covered by the discovery order and are within the scope of the COO's personal knowledge. Plaintiff's failure to demonstrate any prejudice is also a factor. Additionally, the Court's determination to deny Plaintiff's motion to certify is not based on this portion of the evidence – it is harmless error on CCS's part, at worst.

- *Exhibit D and Paragraph 17*: these are the templates of the different notices that CCS sends out, from which CCS argues that the variety of notices defeats commonality for purposes of certification. Again, there is no demonstration of prejudice – Plaintiff responds to the existence of the different notices in her reply by arguing that they all have similarly deceptive elements, and lays in out detail what those common elements are. And, as indicated in the paragraph above, the Court does not find that the evidence was produced in an untimely fashion or in violation of the Court's order.
- *Paragraph 11*: the COO discusses the various different reasons that drivers choose to pay in response to the notices (e.g., they actually acknowledge fault or do not want their licenses suspended for driving uninsured or do not want their insurance companies notified) and Plaintiff moves to strike as hearsay (with no further analysis). As CCS points out, the evidence is not being offered for the truth of the matter asserted (e.g., that the driver actually was at fault), but simply

to illustrate that there are a variety of reasons that people chose to pay the subrogation claim that are dissimilar to Plaintiff's and that it would require a case-by-case analysis to determine whether or not the notices had had a "deceptive" effect on the recipients.

For all the reasons cited above, the Court DENIES this portion of the motion to strike.

The recordings of phone calls with Plaintiff and the deposition testimony re: the calls

Plaintiff argues that, with the exception of one call (where the transcript includes a preliminary warning that the call was being recorded) there is no indication in any of the remaining transcripts that Plaintiff was aware that she was being recorded and/or gave her consent thereto, a violation of RCW 9.73.030. Such recordings are inadmissible, as is any evidence (e.g., Plaintiff's deposition testimony regarding the conversations) derived from the recordings. State v. Slemmer, 48 Wn.App. 48, 51 (1987) *overruled on other grounds* in State v. Frohs, 83 Wn.App. 803 (1996).

CCS argues that Washington law does not apply – the calls originated from (and were recorded in) New Hampshire[2], where there is no requirement that an announcement that the call is being recorded be reflected in the transcript of the call (merely that "the surrounding circumstances demonstrate that the consenting party knew" that the call was being recorded; State v. Locke, 144 N.H. 348, 355 (1999)).

In the Court's estimation, both parties are wide of the mark on this issue. In the first place, neither makes any reference to the Erie doctrine, which holds that federal courts sitting in diversity apply state substantive law and federal procedural law. Erie R.R. v. Tompkins, 304

---

[2] State v. Fowler, 157 Wn.2d 387, 395 (2006): "[T]he test for whether a recording of a conversation or communication is lawful is determined under the laws of the place of the recording."

U.S. 64, 78 (1938). At first glance, this request to exclude evidence certainly appears to be a procedural matter, and thus subject to federal rules under Erie. However, there is also federal case law (concerning a California wiretapping statute) which has found such a law to be substantive in nature and thus bound to be applied even in federal court. *See* Feldman v. Allstate Ins. Co., 332 F.3d 660, 667 (9th Cir. 2003). Although it is not on all fours with the facts of this case, it is clearly relevant to the analysis and application of similar statutes in other cases. But the Court finds that the issue has not been adequately briefed herein.

In any event, the Court indicates that (having reviewed the evidence sought to be excluded) nothing in Plaintiff's recorded telephone conversations nor the deposition testimony based on those conversations played a decisive role in the Court's ultimate determination of the substantive issues involved in this motion. The operative information regarding Plaintiff's behavior (primarily the fact that she contacted her current counsel, by her own estimation, five times before receiving a notice from Defendant CCS) is contained in deposition testimony which Plaintiff has not sought to be excluded. (*See* Dkt. No. 46, Ex. A at 34:1-5, 44:7-10.)

Expert opinion of Dr. Rauschenberger

Plaintiff wants the Court to essentially conduct a Daubert analysis of Defendant's "human factors expert" (offered as an expert in "consumer behavior," his opinion is that there is no uniform response to notices of this type, necessitating a case-by-case analysis of how any given recipient perceived the message; Dkt. No. 47) and strike it as unqualified. Plaintiff criticizes Dr. Rauschenberger's lack of qualifications (none of his experience appears related to debt collection notices) and the unreliability of his statistical approach (his use of a self-selecting web survey system, SurveyMonkey.com; his failure to show how the survey population compares to the proposed class; the extremely low percentage of respondents – 2% – who had

received subrogation notices related to auto accidents; and the fact that none of the respondents were shown any of the debt collection notices sent out by CCS).

As Defendant points out, however, "[d]isputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility…" Kennedy v. Collagen Corp., 161 F.3d 1226, 1231 (9th Cir. 1998)(*quoting* McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1044 (2nd Cir. 1995). The Court indicates that, while little weight was assigned to Dr. Rauschenberger's analysis and opinions and they were not a significant factor in the decision to deny, the Court will not strike the declaration.

*Class certification*

The Court will engage in the traditional two-part inquiry. First, Plaintiff must satisfy the FRCP 23(a) requirements: (1) numerosity, (2) typicality, (3) commonality, and (4) adequacy. Once those are established, Plaintiff must then demonstrate that at least one of the 23(b) requirements for certification has been met. It is Plaintiff's burden to establish that all the certification requirements have been satisfied. Comcast v. Behrend, 569 U.S. 27, 33 (2013).

FRCP 23(a)(2): Commonality

Satisfaction of this element simply requires a "single significant question of law or fact." Abdullah v. U.S. Sec. Assoc's, Inc., 731 F.3d 952, 957 (9th Cir. 2013). Plaintiff lists the following issues as common questions of law:

- Were CCS's collection notices deceptive or unfair?
- Were CCS's collection notices violative of Panag?[3]

---

[3] Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27 (2009), a landmark case finding that a collection services "subrogation claim" notices were deceptive under the CPA, that the notices constituted "trade or commerce" under the CPA, and that the class (uninsured motorist-recipients of the notices) had standing to sue under the CPA.

- Did CCS's practices occur in "trade or commerce"?
- Did CCS's practices affect the public interest?[4]
- Whether the amounts sought by Progressive (as reflected in the "Amount Due" stated in the collection notice) actually equaled the "liability determination" made by the insurance company?

Both CCS and Progressive attack the existence of "common" questions of law and fact on the basis of the "causation" element of the CPA, and both for the same reason; namely, that CCS employed a variety of notices and phone call scripts with the persons whom they targeted for collection. The permutations and combinations of different written and oral communications, Defendants argue, make the determination of causation an individualized one.

The Court is forced to agree: given that CCS's communication with the potential class members is not limited to a single phone call, or a single written communication, but is instead spread out over a series of communications represented by a variety of different letters and a plethora of phone scripts with varying responses, the determination of whether (and at what point, and how) an individual member was deceived cannot be reduced to a common question of fact but will depend instead on case-by-case analyses incompatible with a class action mechanism.

Furthermore, the Court notes that the inquiry would not be limited simply to the deceptive nature of the collection notices. Plaintiff herself was contacted by phone prior to receiving any notice from CCS. (Shapiro Decl. at ¶ 13, Ex. B at 3.) Any consideration of whether the practices of CCS were deceptive would have to include an analysis of the phone conversations as well; the Court does not even need to see the evidence of Defendant's various telephone scripts to know that such an undertaking would require an individualized analysis (not

---

[4] These last two questions ("trade or commerce" and "public interest" have already been answered in the affirmative in Panag, and Defs do not challenge certification on these bases.

to mention the complications created by the evidentiary issues of the admissibility of the transcripts of the phone calls).

FRCP 23(a)(3): Typicality

Plaintiff lists the factors supporting a finding of typicality as:

1. Conduct by Defendants which was not unique to Plaintiff and was experienced by the class;
2. Plaintiff suffered an injury as a result of this conduct which is
3. Same or similar to the injuries of the members of the class.

Agne v. Papa John's Int'l, 286 F.R.D. 559, 568 (W.D.Wa. 2012).

Although "[t]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought" (Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)(citation omitted)), a motion for certification should not be granted "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." Id. (*quoting* Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990), *cert. denied,* 112 L. Ed. 2d 667, 111 S. Ct. 675 (1991)).[5] It is the rule in the Ninth Circuit that a named plaintiff's motion for class certification should not be granted if "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." Id. (*citing* Gary Plastic, 903 F.2d at 180.).

---

[5] *See also* J.H. Cohn & Co. v. American Appraisal Assoc., Inc., 628 F.2d 994, 998-99 (7th Cir. 1980); Hoexter v. Simmons, 140 F.R.D. 416, 422-23 (D. Ariz. 1991) (plaintiffs claims atypical of class because unique defense could be asserted against them); Rolex Employees Retirement Trust v. Mentor Graphics Corp., 136 F.R.D. 658, 664 (D. Or. 1991)("The certification of a class is questionable where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or to a subclass.").

The Court has never seen a clearer case of "subject to unique defenses" in a proposed class action. Plaintiff's behavior – first in consulting with an attorney who specializes in class actions related to subrogation claims by collection agencies prior to receving any notice from Defendant, then in contacting CCS <u>after</u> it had decided to drop the claim and volunteering to pay the requested amount (despite the fact that she contested liability), and finally in suing the other driver for all her losses <u>except</u> the money she paid to CCS – seriously calls into question whether she was deceived at all by the notices she received from CCS, and whether she either believed she owed the money or was compelled by some circumstance other than liability to remit the requested sum.

Defendants argue that the small claims judgment raises issues of *res judicata* and/or collateral estoppel. Plaintiff disputes that, on the ground that a CPA/unjust enrichment case against a collection agency and an insurance company is not subject to a *res judicata*/collateral estoppel defense on the basis of a small claims negligence action against the other driver. The Court is inclined to agree with Plaintiff but the issue is neither fully briefed nor necessary for a disposition of this certification motion and the Court makes no finding either way.

The Court does find it beyond question, however, that the possible defenses listed above are substantive and that they are defenses to which all the other class members would not be subject. This alone compels the Court to deny Plaintiff's request to certify a class.

FRCP 23(a)(4): Adequacy

CCS attacks Plaintiff's adequacy as a class representative on several grounds, two of which are fairly weak, one of which is dispositively strong.

First, Defendant points out that Plaintiff's counsel is basically underwriting the prosecution of this lawsuit; i.e., that Plaintiff does not have sufficient funds to hire counsel, and

her attorney will be paid (if at all) out of the proceeds of a successful class action.  The agency points to several cases disapproving of this practice, but they are easily dismissed as being outdated and not in line with current thinking on this topic.  As Plaintiff points out, the Rules of Professional Conduct ("RPCs") now permit attorneys to advance the costs of litigation to a client with the understanding that they will be reimbursed out of the recovery.  RPC 1.8(e).  The financial resources of Plaintiff are considered irrelevant in analyzing their adequacy as a class representative.  1 NEWBERG ON CLASS ACTIONS § 3:69; In re Intel Corp. Microprocessor Antitrust Litigation, 526 F.Supp.2d 461, 464 (D. Del. 2007).

  CCS also argues that Plaintiff lacks credibility, based on changes that she made to her deposition testimony (primarily regarding which attorney – her former employer or Mr. Ide – she talked to when).  Plaintiff rebuts this accusation by pointing out that the events she was being asked to recall were 3.5 years prior to her deposition and that the corrections were made after she had had an opportunity to review her attorneys' records and refresh her recollection.  The Court does not find that these corrections to Plaintiff's recollections rise to a level that calls her credibility into question.

  However, the same "unique defenses" issues which render her atypical also call for a ruling that she is not an adequate class representative.  Whatever interests she has in common with the remainder of the class are in danger of being overwhelmed by the attention she and her counsel will need to put into mounting a defense against the decidedly unique circumstances under which she initiated this lawsuit.

<u>FRCP 23(b)(3): Predominance and superiority</u>

FRCP 23(b)(3) requires a showing that

> the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class members predominate over any

questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Defendants make a couple of "insufficient class definition" arguments that seem to go more to the "superiority" portion of 23(b)(3) than the "predominance" requirement. While they are not invalid arguments, they are not fatal to certification in the sense that the wording of the definition could be revised to resolve the problems.

CCS asserts that the phrase (found in the Class and Subclass definitions) "[a]ll persons in the State of Washington" is too vague because it fails to mention <u>when</u> the person had to have been "in the State of Washington." Again, this is fairly easy problem to remedy and hardly fatal to certification.

Progressive makes a stronger argument when it points out that the definitions only require a class member to have "*received* a debt collection-type notice" – the definitions say nothing about whether the recipient read and/or relied on the notice before remitting payment. Again, this is a issue which can be remedied through rewording, but it does point to problems of vagueness which could lead to massive problems of proof should a class with this definition be certified.

The predominance requirement is much more demanding than the commonality requirement. <u>Amchen Prods. v. Windsor</u>, 521 U.S. 591, 623-24 (1997). However, there is still no necessity of *unanimity* of the common questions, simply that the common questions outweigh individual issues. <u>McCall v. Drive Financial Services, L.P.</u>, 236 F.R.D. 246, 254 (E.D.Pa. 2006).

CCS makes two related arguments that individual circumstances will predominate over common questions in the class action litigation which Plaintiff proposes.

First (as discussed above), it argues that its subrogation claim practice involves a variety of different notices and phone call scripts that are used in such a variety of permutations and

1 combinations that it is not possible to reduce the proximate cause analysis to a single kind of
2 communication with a uniform content.  In other words, deciding whether a class member relied
3 on a deceptive or unfair communication from CCS will require an individual determination of
4 the content of the notices and phone calls specific to each class member.

Plaintiff first response to this argument is her motion to strike the evidence of the different notices and scripts as not having been timely produced in response to your earlier discovery order.  The Court has already denied that request.

Alternatively, Plaintiff argues that the fact that there are different forms of the collection notice does not defeat certification; that the notices have common elements which produce the same overall deceptive effect.  She points to the fact that all the notices contain:

- The phrase "subrogation claim"
- A file number (not a claim number)
- An indication that the recipient can "pay" by check or credit card
- The words "COLLECTION" in all caps
- An indication that the amount due has been "placed for recovery" based on the insurance company's "investigation"
- A claim that the recipient is "financially responsible for the debt"
- An indication that failure to respond will result in "further efforts" to recover the amount

Many of these features (e.g., whether the letter contains a "file number" or a "claim number," the indication that a non-response will result in "further efforts") do not strike the Court as sufficiently substantive or determinative of a deceptive impact to be considered as common questions which will predominate in the litigation.   But in the final analysis the same issues which lead the Court to conclude that the issues of fact and law could not be reduced to a common, class-wide series of determinations also force the conclusion that questions of law and fact common to the class would not predominate over questions affecting individual members.

1    CCS makes a further case for the predominance of individual issues over common ones
2    with its argument that, because different recipients pay the amount requested for different
3    reasons (e.g., the recipient acknowledges he/she was at fault, the recipient does not want a
4    license suspension because they are uninsured, the recipient does not want his/her insurance
5    company notified of the accident; *see* Dkt. No. 48, Decl. of Shapiro ¶ 11), a determination of
6    whether the class members relied on the allegedly deceptive features of the notice will require an
7    individual inquiry.

Plaintiff's first objection to this assertion is evidentiary: the only evidence of this contention of "different payment reasons for different recipients" is the hearsay declaration of the COO of CCS. The Court has already ruled *supra* that this statement is not offered for the truth of the matter asserted and will not be stricken on hearsay grounds.

Additionally, Plaintiff contends that the focus of the "but for" causation analysis is solely on Defendants' conduct and the fact that, had these collection notices not been sent out, no one would have voluntarily paid the amounts requested. This is an overly simplistic analysis.

Plaintiff's "but for" causation argument breaks down for those percentage of the recipients who actually were at fault in the accident. Plaintiff says that it is speculative to assume, in the absence of any admissible testimonial evidence, what the motives of the paying recipients/potential class members are. The Court does not find it speculative to assert that, among a potential class of 4600+ persons, a certain percentage of that group will actually have been at fault in their accident. Which percentage is unimportant – the operative and fatal fact is that it requires a case-by-case analysis to determine which members of the class fall into that category.

On the question of "whether a plaintiff who pays a valid debt in response to unlawful collection activities is injured in the amount paid," Judge Robart of this district found that there was no Washington State CPA case authority. A survey of other jurisdictions who have addressed a similar question led him to conclude: "[P]laintiffs are not injured in the amount collected when the plaintiff owed the debt even where the debt collector violated state law in doing so." Moritz v. Daniel N. Gordon, P.C., 895 F.Supp.2d 1097, 1117 (W.D.Wa. 2012). *See* Gray v. Suttell & Assoc's, 2012 WL 1067962 at *6 (E.D.Wash. 2012)("To the extent that Mr. Scott alleges a [CPA] injury as a result of the garnished amount based solely on the underlying debt [which he acknowledged he owed] and interest thereon, Mr. Scott fails to allege an injury to business or property."); Flores v. The Rawlings Co., LLC, 117 Haw. 153, 170 (2008); Camacho v. Auto Club of S. Cal., 142 Cal.App.4th 1394, 1405 (2006).

Since this is the current state of the law, it would necessitate an inquiry into the circumstances of every class member's case to ascertain whether he/she acknowledged fault in his/her particular accident, thus rendering Defendants immune from CPA/unjust enrichment liability. Such an inquiry would surely predominate over any common questions among the class members.

## Conclusion

There are a number of factors dictating the Court's conclusion that this matter is not suitable for certification as a class action. The fact that individualized determinations on questions of deceptiveness and motivations for paying the requested amount will far outnumber questions common to the class as a whole defeats Plaintiff's motion on both the issues of commonality and predominance. Additionally, Plaintiff's atypicality and inadequacy as a class

representative based on the unusual circumstances of her individual case is further fatal to her request.

The motion to certify a class in this matter is DENIED.

The clerk is ordered to provide copies of this order to all counsel.

Dated June 25, 2018.

The Honorable Marsha J. Pechman
United States Senior District Court Judge